Ms. Welch, just stick around. We will hear the Surtee case second. And if Mr. Surtee doesn't appear, we will deem him to have waived oral argument. Ms. Vargas. Thank you. Good morning, your honors. May it please the court. The decision the court has to make today is whether the immigration judge's decision, as affirmed by the board, can stand in defying the petitioner's request for deferral of removal under the UN Convention Against Torture. This decision was based on an error of fact that the petitioner was never threatened by the cartel. It was also based on a misunderstanding of the petitioner's entirety of his claim that he feared being a significant debtor to the cartel. And additionally, this decision was based on the judge ignoring substantial country condition evidence, an unchallenged expert report that supports there is a substantial risk of torture or death for Mr. Torres that would be acquiesced to by the Guatemalan government officials. The facts are undisputed and have been corroborated by the record evidence that the petitioner is a debtor and a federal cooperative against the Sinaloa cartel, which Dr. Rosen has testified to is one of the most violent and dangerous transnational criminal organizations in the Western Hemisphere. The consequence for cooperation or transgressing the cartel, such as cooperation or incurring a significant debt, is met with violence. Counsel, what evidence was presented of past torture? The petitioner never claimed past torture, Your Honor. He was never in Guatemala. And although it's one of the factors this court can consider, or the agency can consider. Was there any evidence of an inability to relocate? Relocation wasn't challenged by the agency. No, I said what evidence did he present? Of that relocation was unreasonable. Well, Your Honor, the. It wasn't an issue brought up by the agency of relocation, and so that wasn't a point that the agency looked at in determining whether Mr. Torres faced a substantial risk of torture or death. And also relocate. He would be targeted specifically. I'm sorry. Any evidence that he would be targeted specifically? There was an abundance of evidence. Mr. Torres. What sets this case apart that I think from many cases regarding cartels is that Mr. Torres is known to the Sinaloa cartel. He's been sought after by the cartel. He's been promised he's been sought after to keep quiet on his keep quiet on the cartels illicit activities. And so there is there's an abundance of evidence showing that he the Sinaloa cartel is aware of his arrest. He has been communicated the of the consequence of cooperating with federal authorities is death. And so that is in the record and hasn't been disputed by the agency that the Sinaloa cartel is aware of what Mr. Torres that Mr. Torres is a debtor and that they have been motivated to find out whether he's been speaking to the authorities. And so you would believe there's the insufficient evidence of that first. I guess this notion of he has been targeted by the Sinaloa cartel cartel and any evidence that this torture would be conducted by a government official that the board maybe ignored that was presented. Well what's interesting is that the immigration judge's decision which the board adopted and just supplemented its reasoning. The immigration judge actually concedes that the the criminal organizations in Guatemala including the cartel work with the acquiescence of government officials. She stated that the immigration judge stated that in her decision. Despite that finding which was consistent with the experts report she then goes on to say dismisses that as general country conditions which wouldn't support a substantial risk of torture. But she was required to look at all the factors in Mr. Torres's case. This is not this is not an issue of him fearing just general violence that's occurring in Guatemala. It's specific to what he's done. The fact that the cartel knows that he's from Guatemala the Sinaloa cartel operative who he cooperated with the federal authorities against knows where he is in Guatemala has associates in Guatemala. Substantial evidence was submitted regarding the presence of the Sinaloa cartel operating in Guatemala and penetrating state apparatus in Guatemala as well. And so can you can you walk me through where in the record we get to knowledge of what really puts Mr. Torres in danger. How is the cartel going to know what happened. Yeah. So what what the fact finder has to or the adjudicator has to look at is is there a substantial risk of torture. And so the regulations layout factors that must be reviewed you know case by case of whether that standard is met. So it's undisputed that Mr. Torres has transgressed a very dangerous and powerful criminal organization. That's not in dispute. What's also not in dispute is the modus operandi of this criminal organization in going after people that transgressed them. That's in the record as well. This organization has shown specific interest to the petitioner. They have sought out proof that he wasn't cooperating. He in fact was threatened by a cartel operative when he was out on pretrial release telling him again that the consequence for snitching or cooperating is death. So the interest from the cartel is there. They are aware of his pending case and they have communicated with him the very real threat of the consequence of cooperation. And your honors I see that I will save the rest of the time for rebuttal. Certainly counsel. Ms. Strong. May it please the court. Alana Young for the Attorney General. Your honors there's a narrow there are two narrow issues before this court. And the question is two of the issues. One petitioner was threatened for cooperating with the cartel. But the distinction is he was not threatened because of his cooperation. That's one. He was not threatened because of his cooperation. He was threatened not to cooperate. He was told various times to not cooperate with the cartel. The other part is petitioner has not shown has not point to evidence before this court that compels reversal under Elias Zacharias and Ming Dai of the agency's factual finding that the cartel knows or would discover that he cooperated. And your honor we have multiple incidences in the record petitioners own testimony. The best evidence and his declaration corroborating his testimony is that the cartel is satisfied that he didn't cooperate. We have for example let's start from the beginning the September 16 2017 arrests. We have the police officers avid David which talked about there was already an informant. The informant was describing the incidents that led to the arrest of Jose and petitioner. We know that during that arrest petitioner told the officer I don't know anything. I didn't cooperate. He refused to name who his operatives who he was working with. Then we have the situation where Jose and petitioner were in the holding cell. Jose was like don't tell anyone. Don't tell anyone what's happening. And petitioner said I'm not going to say anything. He went to talk to a police officer went back there back again in the whole cell again petitioner was like dude what's going on. Petitioner says I didn't say anything. I didn't say anything. We have other incidents of the pretrial release where Jose's sister contacted petitioner's wife and asked did he say anything. Don't say anything. And petitioner said I didn't say anything. I'm not going to say anything. I didn't say anything. And then here's proof. Here's my initial Miranda statement that says I didn't say anything. And that information we know that that information was sent to the cartel. The cartel said that they were satisfied. What other incidences do we have? We have again Jose's sister showing up at petitioner's house asking hey I need you to retrieve that truck because it's in your name we need that truck. Petitioner talks to Jose on the phone petitioner again goes I didn't say anything. I didn't say anything. I didn't cooperate. Petitioner's own testimony repeatedly throughout the incidents and the other evidence the police reports. The police reports we have his declaration. We have all this evidence indicating that the cartel has been satisfied the petitioner did not cooperate. So petitioner before this court has not pointed to evidence compelling reversal of the agency's determination. And that's the first step in the hypothetical chain of events. And that's the part the petitioner did not establish. And that's why the agency denied his cap protection claim. Unless your honors have any more questions the government rests on its grief. Thank you. Anything further counsel? So to address the to address whether the cartel was satisfied with petitioners supplying the Miranda report. The record shows the cartel was still interested in whether Mr. Torres cooperated. After he supplied the Miranda report he was contacted by the Sinaloa cartel operative who is in prison. Through an illegally obtained phone who threatened him that the consequences for cooperation is death. Beyond that family members of Mr. Valles also contacted the respondents family member. Or excuse me petitioner's family members while petitioner was serving his jail sentence. So there is ongoing interest in Mr. Torres's case. That demonstrates that the cartel wasn't just satisfied with the Miranda report. And it's it would be an absurd proposition to say that that the cartel has taken so many steps to ensure that the respondent wasn't cooperating. That they wouldn't be similarly motivated to see if in fact he did cooperate. The big fact that the government missed was that Mr. Torres's cooperation helped convict Mr. Valles. And that is not in dispute and the government fails to mention that in their brief. The agency does not mention that in their decision. And so there is substantial evidence that support that Mr. Torres. That the Sinaloa cartel the cartel that he fears could find out that he cooperated. But beyond that there's other factors that place him at risk. Thank you so much. The case is taken under advisement.